ARKANSAS STATE HIGHWAY COMMISSION V.
LYMAN DIXON ET AL

5-4858                                         439 S.W. 2d 912

Opinion Delivered April 28, 1969

*Thomas B. Keys* and *James K. Biddle* for appellant.

*Felver A. Rowell, Jr.* for appellees.

GEORGE ROSE SMITH, Justice.   The Highway Commission brought this condemnation suit to acquire 1.78 acres as a right of way for Interstate 40 across the appellees' 320-acre farm.   The jury fixed the landowners' compensation at $5,500.00.   The Commission, in seeking a new trial, insists that there was no substantial evidence to support the amount of the verdict.

We find it necessary to discuss only the testimony of the witness Lloyd Pearce, a real estate expert who testified for the landowners.   On direct examination Pearce valued the 320 acres at $109,275 immediately before the taking and at $103,725 immediately after the taking—a difference of $5,550, which slightly exceeds the amount of the jury's award.   As a qualified expert who had familiarized himself with the property, Pearce was properly permitted to state his opinion without first enumerating the facts upon which it was based.   *Arkansas State Highway Commn. v. Johns*, 236 Ark. 585, 367 S.W. 2d 436 (1963).   Counsel for the Highway Commission might then have shown by cross-examina-

tion that Pearce had no substantial basis for his opinion. In fact, however, counsel did not pursue that course, their cross-examination being confined principally to a few questions about comparable sales in the vicinity.

After the construction of the highway 25 acres in the southwest corner of the appellees' land will be on the unprotected side of a levee. The principal landowner, Lyman Dixon, testified that those acres will have no value in the future, because the levee will completely cut off his access to that part of the farm. In this court the Commission insists that the 25 acre-tract cannot properly be assigned no value whatever. On that premise it is argued that Pearce's valuation after the taking cannot be regarded as substantial evidence, because, it is said, he too assigned no "after" value to the unprotected 25 acres.

That argument misconstrues Pearce's testimony. Before the taking the 25 acres outside the levee were accessible, by means of a ramp. Of the 25 acres, 10.3 acres were in cultivation and 14.7 acres were in woods. Pearce, in arriving at his "before" value, used the following figures, later rounding off the total to $109,275.00:

|  |  |
|---|---:|
| 295 acres at $350 an acre | $ 103,250.00 |
| 10.3 acres at $300 an acre | 3,090.00 |
| 14.7 acres at $200 an acre | 2,940.00 |
| Total "before" value | $ 109,280.00 |

If Pearce had actually assigned no value at all to the 25 unprotected acres after the taking, as the Commission suggests, then according to Pearce the landowners' total damage would have been as follows:

|  |  |
|---|---:|
| 1.78 acres taken, at $350 an acre | $ 623.00 |
| 10.3 acres isolated, at $300 an acre | 3,090.00 |

14.7 acres isolated, at $200 an acre     2,940.00

Landowners' total damage     $   6,653.00

In fact, as we have already said, Pearce fixed the land-owners' total damage at only $5,550.00. Hence even upon the Commission's theory he assigned a value of $1,103.00 ($6,653.00 minus $5,550.00) to the unprotected 25-acre tract after the taking. We have no basis for saying that such an "after" valuation of the 25 acres is wholly without foundation. To the contrary, the Commission's own expert witness, Zack Mashburn, in arriving at his "before" value of the unprotected tract, said that he threw in the 15 wooded acres "as nothing, because I don't think it would be worth anything on the market." Upon the record as a whole we find Pearce's testimony to constitute substantial evidence adequate in itself to sustain the amount of the verdict.

Affirmed.

Jones, J., concurs.

J. Fred Jones, Justice. I concur with the majority in affirming the judgment of the trial court in this case, but I do so only in recognition of this court's limitations in appellate jurisdiction.

I recognize that this court is committed to the "substantial evidence" rule in jury cases and if there is any substantial evidence to support the verdict of a jury, we affirm the judgment rendered thereon. *Hot Springs Street Railway Company* v. *Hill,* 198 Ark. 319, 128 S.W. 2d 369. Except, of course, in such cases where the verdict is rendered on an erroneous instruction, or under the influence of passion or prejudice, or where the amount of the verdict and judgment shocks the sense of justice. Ark. Stat. Ann. § 27-1903 (Repl. 1962); *Ark. State Highway* v. *Carder,* 228 Ark. 8, 305 S.W. 2d 330; *Little Rock & Fort Smith Ry. Co.* v. *Baker,* 39 Ark. 491.

The only point raised by the appellant in the case at bar is that "there was no substantial evidence in the record to support the verdict and the appellant is entitled to have judgment modified and the trial court directed to enter a judgment in the sum of $500.00 in favor of the appellees." This court simply does not have the constitutional power, nor the legislative authority, to do what the appellant requests under the facts in the record before us in this case.

Arkansas Statutes Annotated § 27-1903 (1962) provides as follows:

"The verdict of any jury rendered in any action for the recovery of damages where the measure thereof is indeterminate or uncertain, *shall not be held to be excessive, or be set aside as excessive except for some erroneous instruction, or upon evidence, aside from the amount of the damages assessed, that it was rendered under the influence of passion or prejudice.* Provided, that the circuit judge presiding at the trial may on motion for a new trial filed by the losing party, if he deems the verdict excessive, indicate the amount of such excess, and thereupon, if the losing party shall offer to file and enter of record a release of all errors that may have accrued at the trial if the prevailing party will remit the amount so deemed excessive, and the prevailing party shall refuse to remit the same, the verdict shall be set aside." (Emphasis supplied.)

In the case at bar the instructions to the jury are not questioned. There is no evidence, aside from the amount of the damages assessed, that would indicate the verdict was rendered under the influence of passion or prejudice, and since we are not legally permitted, physically able, or professionally qualified, to view the land and make our own appraisal, but must rely on the record before us, we are unable to say that the amount of the verdict shocks the sense of justice.

The sworn testimony of legally qualified expert appraisers, when based on legally acceptable and properly obtained information, has always been accepted as substantial evidence in arriving at the fair market value of the property appraised, and such testimony should be reliable in arriving at the fair market value and resulting damages in highway condemnation cases.

A matter that has become shocking, however, and leaves the substantial nature of evidence in considerable doubt, is the wide difference we find in the appraisals of the so-called experts in highway condemnation cases.

In the case at bar the highest damages estimated by the Highway Commission's expert witnesses were $500.00 and the lowest estimate by the property owners' experts was $5,500.00. The property owner himself testified that his damage was $7,307.00. Judgment was entered upon the jury's verdict for $5,500.00.

In the case of *Arkansas State Highway Comm.* v. *Wahlgreen,* 246 Ark. 472, 438 S.W. 2d 694, the highest estimate of damage by the Highway Commission's experts was $9,000.00, and the lowest estimate by the land owner's experts was $58,600.00. The owner himself testified that his damage was $83,000.00. Judgment was entered on the jury's verdict for $60,000.00.

In the case of *Arkansas State Highway Comm.* v. *Hawkins,* 246 Ark. 55, 437 S.W. 2d 218, the highest estimate by the Highway Commission's experts was $3,-250.00, and the lowest estimate by the land owner's experts was $44,500.00. The owner's own estimate of damage was $77,500.00. Judgment was entered on the jury's verdict for $55,000.00.

In the case of *Arkansas State Highway Comm.* v. *Maus,* 245 Ark. 357, 432 S.W. 2d 478, the highest estimate of damage by the Highway Commission's experts was $6,150.00, and the lowest estimate by the land own-

er's experts was $21,300. The owner's own estimate was $21,500.00. Judgment was entered on a jury verdict for $16,400.00.

In the case of *Arkansas State Highway Comm.* v. *Dean*, 244 Ark. 405, 425 S.W. 2d 306, the highest estimate of damage by the Highway Commission's experts was an *enhancement* in value of $44,600.00, and the lowest estimate by the land owner's experts was $91,650.00 damages. The owner's own estimate was $114,196.00. Judgment was entered on the verdict for $41,500.00.

In the case of *Arkansas State Highway Comm.* v. *Darr*, 246 Ark. 205, 437 S.W. 2d 463, the highest estimate of damages fixed by the Highway Commission's expert appraisers was $23,500.00 and the lowest estimate fixed by the land owner's appraisers was $38,500.00. The land owner estimated her own damage at $98,500.00. Judgment was entered on a jury verdict for $50,000.00.

All the verdicts rendered in the cases, supra, were within the bounds of the value evidence produced by the land owners and their expert witnesses and all the judgments, except in Dean and Darr, were sustained by some substantial evidence. In each of these cases all the expert appraisers used the same criteria in reaching their conclusions, both as to the value of lands taken and damage to the remaining lands because of the taking. They simply had different opinions as to values, both as to enhancement and damages, and with the few comparable sales in the area, they reached widely different conclusions. In no case has the value of adjacent lands been enhanced by the construction of an interstate highway.

It is perfectly obvious from these cases that there is something wrong with the market value appraisals in highway condemnation cases and it would appear that either the Highway Commission, or the land owners, are using appraisers whose qualifications as experts exceed their ability as appraisers of the true market values of, and damage to, the lands involved. In any event, such

differences in the opinions of experts cast considerable doubt on the substantial quality of their testimony, but having no better evidence in the records coming to this court on appeals, we have no alternative except to base our opinions on the evidence we do have. Consequently, I have no other alternative except to concur in the affirmance of the judgment in the case at bar.